# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | |
|---|---|
| **DIERRA FIELDS** | **CASE NO.:** |
| Plaintiff, | **JUDGE:** |
| **CITY OF AKRON, OHIO** <br> C/O <br> Akron Law Director <br> 172 S. Broadway, Suite 200 <br> Akron, Ohio 44308 | |
| and | **PLAINTIFF'S COMPLAINT** |
| **OFFICERTHOMAS SHOEMAKER** <br> **(In his Official and Individual Capacities)** <br> C/O <br> Akron Police Department <br> 217 S. High Street <br> Akron, Ohio 44308 | |
| C/O <br> Akron Law Director <br> 172 S. Broadway, Suite 200 <br> Akron, Ohio 44308 | **(Jury Demand Endorsed Hereon)** |
| and | |
| **OFFICER TIMOTHY SHMIGAL** <br> **(In his Official and Individual Capacities)** <br> C/O <br> Akron Police Department <br> 217 S. High Street <br> Akron, Ohio 44308 | |
| C/O <br> Akron Law Director <br> 172 S. Broadway, Suite 200 <br> Akron, Ohio 44308 | |
| and | |
| **CHIEF BRIAN HARDING** | |

**(In his Official and Individual Capacities)**
C/O
Akron Police Department
217 S. High Street
Akron, Ohio 44308

C/O
Akron Law Director
172 S. Broadway, Suite 200
Akron, Ohio 44308

Plaintiff Dierra Fields, by and through counsel, brings this Complaint against Defendants City of Akron, Ohio, Thomas Shoemaker, Timothy Shmigal, and Brian Harding (collectively, "Defendants"), and makes the following allegations upon personal knowledge as to Plaintiff's own acts and upon information and belief, and states as follows:

## INTRODUCTION

1. This cause of action arises out of Dierra Fields' January 11, 2024, encounter with members of the Akron Police Department at 818 Saxon, Akron, Ohio 44314.

2. Plaintiff alleges, without limitation, that on January 11, 2024, Defendant Thomas Shoemaker wrongfully used gratuitous force against Ms. Fields when he handcuffed Ms. Fields and subsequently lifted her in the air and body-slammed her to the ground. Ms. Fields was NOT actively resisting arrest and posed NO threat to Defendants or others.

3. Plaintiff further alleges that Defendant Timothy Shmigal violated his duty to intercede and prevent another officer from violating an individual's constitutional rights.

4. Plaintiff further alleges, without limitation, that Defendant Thomas Shoemaker wrongfully arrested Ms. Fields after assaulting her and wrongfully pursued the criminal prosecution of Ms. Fields.

2

5. Plaintiff further alleges, without limitation, that Defendant City of Akron, Defendant Harding, and Defendant Shmigal knew or reasonably should have known, participated in, endorsed, condoned, and/or ratified the unconstitutional conduct of Defendants Thomas Shoemaker.

6. This cause of action is for money damages brought pursuant to 42 U. S. C. §1983 to redress the deprivation of the rights of Dierra Fields under the color of law by members of the Akron Police Department and City of Akron Law Department.

7. Plaintiff also brings this action pursuant to *Monell v. Department of Social Services of City of New York*, 463 U.S. 658 (1978) and its progeny.

## JURISDICTION AND VENUE

8. This Court has jurisdiction over federal questions pursuant to 28 U.S. C. § 1331, §1343, and 42 U. S. C. §§ 1983,1988.

9. Venue is proper in the Northern District of Ohio pursuant to 28 U.S.C.§1391 (b) because all incidents and events giving rise to the action occurred in the Northern District of Ohio, and upon information and belief, all parties reside in this Judicial District.

## PARTIES

10. At all times relevant to this action, Plaintiff was a resident of the City of Akron, Summit County, Ohio.

11. At all times relevant to this action, Defendant Thomas Shoemaker, Timothy Shmigal, and Brian Harding are/were employed as police officers and/or Chief of Police for Defendant City of Akron, Ohio, and are residents of Summit, Stark, Portage, or Trumbull County, Ohio.

12. At all times relevant to this action, Defendant City of Akron, Ohio is a municipal corporation located in Summit County, state of Ohio.

13. At all times relevant to this action Defendant City of Akron employed all Defendant police officers identified herein.

14. Redress is being sought from all Defendants in their official and individual capacities, and all Defendants were acting under and/or outside of color of law and/or pursuant to the policies, customs, and/or usages of the City of Akron.

## FACTUAL ALLEGATIONS

**January 11, 2024 Arrest of Plaintiff**

15. On January 11, 2024, Defendant police officers were responding to a call involving a family argument at [insert address]

16. Upon arriving, Plaintiff and family members were in a verbal argument.

17. Defendant police officers separated family members involved in the verbal argument to opposite sides of the room.

18. Once separated, one of the young adults on scene was standing on the couch yelling at Plaintiff from across the room.

19. While individuals were arguing in the home, Plaintiff asked Defendant police officers multiple times to leave the home and wait outside with her children to deescalate the situation.

20. Defendant police officers refused every request to allow Plaintiff to wait outside to deescalate the situation.

21. The young adult standing on the couch refused to stop screaming at individuals in the home, while Plaintiff was standing across the room silent.

4

Case: 5:25-cv-00050-BYP Doc #: 1 Filed: 01/10/25 5 of 20. PageID #: 5

22. Despite Plaintiff attempting to deescalate the situation and ceasing to engage in the verbal argument, Defendant Shoemaker, without any justification or probable cause, went to detain Plaintiff by placing her in handcuffs.

23. As Defendant Shoemaker placed Plaintiff in handcuffs, Plaintiff asked why she was being arrested.

24. Defendant Shoemaker stated that he was not placing Plaintiff under arrest but detaining her.

25. Plaintiff asked repeatedly why she was being placed in handcuffs and why she was not allowed to wait outside with her children like she had been asking to do.

26. While Plaintiff was asking Defendant Shoemaker to justify this conduct, and without provocation by Plaintiff, Defendant Shoemaker grabbed Plaintiff, lifted her into the air, and body-slammed her headfirst to the ground.

27. Defendant Shoemaker then forcefully took Plaintiff outside and placed Plaintiff in the back of his police vehicle.

28. Plaintiff was told that she was being charged with obstruction of official business.

29. Defendant police officers then issued Plaintiff a citation and summons to appear in court on a single charge of resisting arrest.

30. Plaintiff asked why she was being charged with resisting arrest when Defendant police officers told her she was being charged with obstruction of official business.

31. While on scene, Defendant police officers discussed what criminal charges should be assigned.

32. Defendant police officers then informed Plaintiff that they discussed the situation, and that Plaintiff was just being charged with resisting arrest.

5

**Criminal Prosecution of Plaintiff**

33. Plaintiff appeared in court and pleaded not guilty to the charge of resisting arrest.

34. Plaintiff hired private counsel to fight the baseless criminal charge.

35. The City of Akron Prosecutors Office offered Plaintiff a number of unethical plea agreements to prevent Plaintiff from seeking accountability for the harm she suffered

    a. First, Plaintiff was given the option to plead guilty to resisting arrest in exchange for Plaintiff being admitted into the Akron City Prosecutors Discretionary Rehabilitation Program.

    b. Second, Plaintiff was given the option to plead guilty to resisting arrest and the Akron Prosecutors Office would move the court to immediately seal Plaintiff's record.

    c. Third, Plaintiff was offered a dismissal if Plaintiff agreed to sign an agreement that would waive her right to file a civil lawsuit seeking damages for any claims arising out of her arrest.

36. During the entire plea-bargaining process, Plaintiff maintained her innocence and requested that all charges be dismissed.

37. Plaintiff, through counsel, sought to reason with the Akron City Prosecutors Office by explaining there was no probable cause and insufficient evidence to charge Plaintiff with resisting arrest, especially considering there was no underly charge for which Dierra was supposedly arrested for.

38. The Akron City Prosecutors Office informed Plaintiff that if she was not going to accept any of the offers, Defendant Shoemaker would assign an additional charge of obstructing official business.

6

39. Dierra refused to accept any of the offers and Defendant Shoemaker, without probable cause, charged Dierra with obstruction of official business, months after her initial arrest.

40. On June 13, 2024, a jury trial was later held, and Dierra was unanimously acquitted of all criminal charges.

**Akron Independent Police Auditor Use of Force Review**

41. On April 12, 2024, City of Akron Independent Police Auditor, Anthony Finnell released a report detailing his conclusions and recommendations after having conducted a review of the incident.

42. Auditor Finnell made the following conclusions:

    a. Defendant Shoemaker violated City of Akron Police Department Policy by using force against Plaintiff that was not justified.

    b. Defendant Shoemaker had no reasonable suspicion to detain Plaintiff.

    c. Defendant Shoemaker had no probable cause to charge Plaintiff with resisting arrest and obstructing official business.

    d. Defendant Shmigal violated City of Akron Police Department Policy by failing to intercede when (1) Defendant Shoemaker placed Plaintiff in handcuffs when Plaintiff had not committed a crime, and (2) Defendant Shoemaker body-slammed Plaintiff.

43. Auditor Finnell ultimately recommend the Akron Police Department change the disposition of Defendant Shoemaker's use of force, under case number 24-00003974 from Objectively Reasonable to Not Objectively Reasonable and take appropriate disciplinary action as warranted by such a disposition.

44. Auditor Finnell also recommended the Akron Police department initiate an Internal Affairs investigation into Defendant Shoemaker and Defendant Shmigal for several violations of the Akron Police Department Policies and Procedures.

## CLAIMS ALLEGED
## COUNT 1
### (Excessive Force)

45. All preceding paragraphs are incorporated as if fully re-written herein.

46. This claim is brought pursuant to Title 42 U.S.C. § 1983.

47. Title 42 U.S.C. §1983 states, in relevant part: "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. . . ."

48. The Fourth Amendment to the United States Constitution states, in relevant part, "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated. . . ."

49. While acting under color of state law, Defendant police officers deprived Plaintiff of her well-established right to be free from excessive force by engaging in conduct described above.

50. While acting under color of state law, Defendant police officers deprived Plaintiff of her well-established constitutional right not to be subjected to excessive force while being arrested, even if her arrest could have been otherwise proper.

51. While acting under color of state law, Defendant police officers deprived Plaintiff of her well-established constitutional right to be free from gratuitous force when she was not actively resisting arrest and posed no danger to Defendant police officers or third parties.

52. On January 11, 2024, the Defendant police officers were only permitted to use the amount of force necessary under the circumstances to arrest Plaintiff.

53. At all times relevant to this matter, the Defendant police officers were clothed with the authority of the state and misused that authority.

54. In this case, Plaintiff claims the Defendant police officers used excessive force when they arrested and/or seized the person of Plaintiff, to wit:

    a. Defendant Shoemaker placed Plaintiff in handcuffs; and

    b. Defendant Shoemaker applied gratuitous force to Plaintiff when he body-slammed Plaintiff while Plaintiff was not resisting arrest.

55. Defendant Shmigal had a duty to intercede and prevent Defendant Shoemaker from violating Plaintiff's constitutional rights.

56. Defendant Shmigal watched Defendant Shoemaker use gratuitous force against Plaintiff in violation of Plaintiff's constitutional rights and did nothing to intercede, violating his duty.

57. As a direct and proximate result of Defendant police officer's actions, as set forth above, Plaintiff has been damaged, including but not limited to, physical injuries, endured pain, anguish, embarrassment, humiliation, feelings of powerlessness, harm to self-esteem, emotional distress, fear, anxiety, loss of sense of personal safety, dignity, and legal fees and costs.

58. Defendants are jointly and severally liable for this conduct.

## COUNT 2
### (Supervisory Liability)

59. All preceding paragraphs are incorporated as if fully re-written herein.

60. This claim is brought pursuant to Title 42 U.S.C. § 1983.

61. Defendant Harding and Defendant Shmigal are/were the direct supervisors of Defendant Shoemaker.

62. Defendant Harding and Defendant Shmigal have supervisory authority over the Akron Police Department and/or the Defendant Shoemaker.

63. At all times relevant to this action, the Defendant Harding and Defendant Shmigal knew or reasonably should have known of, and/or participated in, and/or condoned, and/or ratified:

    a. Defendant Shoemaker handcuffing Plaintiff when she posed no threat to any officer or civilian; and

    b. Defendant Shoemaker body-slamming Plaintiff when she posed no threat to any officer or civilian, was not resisting arrest, and committed no crime.

    c. Defendant police officers pursuing criminal charges against Plaintiff when Defendant police officers had no probable cause

64. Defendant Harding and Defendant Shmigal knew or reasonably should have known that their acts and/or failure to act would likely cause the constitutional injury that befell Plaintiff, to wit: by failing to intercede, endorsing, promoting, encouraging, and/or not disciplining the Defendant Shoemaker's actions, Plaintiff was harmed as a result of Defendant Shoemaker's reckless, wanton, and/or willful actions which were endorsed, condoned, and/or ratified by Defendant Harding.

65. Defendant Harding and Defendant Shmigal had a duty and/or were required by his/their training to take action to discipline and/or otherwise prevent the Defendant Shoemaker from engaging in the above-stated conduct.

66. Despite Defendant Harding and Defendant Shmigal's knowledge of Defendant Shoemaker's misconduct, as stated above, the Defendant Harding and Defendant Shmigal took no action, failed to impose reasonable discipline, failed to follow chain of command, failed to document the instances of misconduct, and/or otherwise abandoned his supervisory duties.

67. The Supervisory Defendants engaged in acts and omissions that were the product of a reckless or callous indifference to Decedent's and Plaintiff's constitutional rights, to wit:

    a. Defendants Harding and Shmigal knew or had reason to know Defendant Shoemaker pursued criminal charges against plaintiff without probable cause;

    b. Defendants Harding and Shmigal trained, endorsed, failed to prevent, and/or condoned Defendant Shoemaker in using gratuitous force against individuals, including Plaintiff, when they were not resisting arrest or a danger to any person; and

    c. Defendant Harding knew or has reason to know Defendant Shoemaker and Defendant Shmigal coordinated their stories to create an artificial narrative in hopes of evading criminal and civil liability.

68. As a result of his failure and/or abandonment of their supervisory duties, as stated above, Defendant Harding and Defendant Shmigal created an environment that condoned the aforementioned misconduct and perpetuated and/or facilitated and/or aided Defendant Shoemaker in the pursuit of criminal charges against Plaintiff and the unreasonably

11

violent and grotesque seizure of Plaintiff's person when Plaintiff posed no threat to Defendants or anyone else and committed no crime.

69. As a direct and proximate result of Defendant Harding and Defendant Shmigal's actions, as set forth above, Plaintiff has been damaged, including but not limited to, physical injuries, endured pain, anguish, embarrassment, humiliation, feelings of powerlessness, harm to self-esteem, emotional distress, fear, anxiety, loss of sense of personal safety, dignity, and legal fees and costs.

70. Defendants are jointly and severally liable for this conduct.

## COUNT 3
### (Municipal Liability Pursuant to *Monell*)

71. All preceding paragraphs are incorporated as if fully re-written herein.

72. Defendants acted pursuant to one or more interrelated de facto polices (even if not official written edicts), practices and/or customs of civil rights violations and unconstitutional practices of the City of Akron and its Police Department.

73. The City of Akron, at all times relevant herein, approved, authorized, ratified, and acquiesced in the unlawful and unconstitutional conduct of its respective employees and/or agents and consequently is directly liable for the acts of those agents pursuant to 42 U.S.C. § 1983.

74. Despite the facts and circumstances surrounding the assault and subsequent arrest of Plaintiff that clearly demonstrate that the actions of the Defendant police officers were unreasonable and unlawful, upon information and belief, the City of Akron has failed to effectively investigate or impose any discipline on Defendant police officers for their

illegal behavior and false reporting (directly or by omission of pertinent information and/or facts).

75. Akron Police failed to conduct independent and unbiased investigations into alleged misconduct of their officers.

76. Sergeant Belacic of the Akron Police Department was responsible for conducting the investigation to determine whether Defendant police officers' actions were justified, however, instead tried to justify the officers' actions by promoting an investigation based on the theory that Plaintiff was an imminent threat to police officers and that Plaintiff resisted arrest.

77. Defendant police officer Shoemaker has been the subject of a federal lawsuit involving similar behavior.

78. An individual was arrested while peacefully protesting the killing of Jayland Walker.

79. While this individual was restrained by Akron Police Officers with his hands behind his back, Defendant police officer Shoemaker punched him in the face twice with no valid justification.

80. This lawsuit was settled in Plaintiff's favor.

81. Since then, there has been no investigation into Defendant police officer Shoemaker's conduct. Had the City if Akron conducted a proper investigation after this incident and took proper disciplinary action been taken, Plaintiff would not have been assaulted and her constitutional rights violated by Defendant police officer Shoemaker.

82. Defendant police officer Shoemaker has a history of using excessive force and Defendant City of Akron has done nothing but approve, authorize, ratify, and acquiesce in the unlawful and unconstitutional conduct of Defendant police officer Shoemaker.

83. Upon information and belief, Defendant police officers have not been properly supervised or disciplined by the Akron Police Department.

84. Defendant City of Akron is aware that its officers engage in violent behavior that involves excessive force in violation of the Fourth Amendment which disproportionately involves African Americans, to wit:

    a. The excessively forceful and violent arrest of Charles Hicks II on February 7, 2021, an unarmed black male who was arrested with an officer's knee near his neck while the officer smothered his mouth and nose with snow as he lay on the ground following his refusal to leave the porch area of his home;

    b. The excessively forceful and violent arrest of Patrick King on October 21, 2018, an unarmed white male who was tased, knocked to the ground, and punched while on his stomach for refusing to identify himself;

    c. The excessively forceful and violent arrest of Jamon Pruiett and LaTrent Redrick on October 1, 2017, two Black males with no prior criminal records who were shot by an Akron police officer while standing outside of an downtown area nightclub and making no threat toward any officer;

    d. The excessively forceful and violent arrest of Dr. Dale Leonhardt on December 5, 2015, an unarmed white male whose arm was broken by an Akron police officer following a minor traffic violation (failing to come to a full stop prior to turning right at a traffic light);

    e. The excessively forceful and violent arrest of Tamika Williams on October 26, 2012, an unarmed Black 13-year-old girl whose arm was broken by an Akron

school resource officer after he put her arm behind her back, pushed her face-first into lockers, and lifted her off the ground.

85. At all times relevant, the Defendant City of Akron and its Police Department had interrelated de facto policies, practices, and customs which included, *inter alia*:

   a. Offering lawsuit waivers in exchange for dropping the charges against individuals who are subjected to excessive force during their arrest;

   b. The failure to properly hire, train, supervise, discipline, transfer, monitor, counsel and/or otherwise control City of Akron police officers who engage in unjustified use of excessive and unreasonable force, false arrest, and/or malicious prosecution;

   c. Officers are trained and aided on how to avoid prosecution for their violent actions by re-phrasing and artfully summarizing their violent actions and encounters with citizens in police documentation;

   d. The police code of silence;

   e. The failure to properly investigate the use of excessive and unreasonable force against civilians, especially African Americans, by City of Akron Police officers;

   f. The failure to properly discipline, monitor, counsel and otherwise control City of Akron police officers who engage in unjustified use of excessive and unreasonable force, false arrest, and/or malicious prosecution; and/or

   g. The failure to properly train and supervise City of Akron police officers with regard to *inter alia* restricting the airways of defendants while being restrained by six to seven other officers.

    h. The automatic ratification of Akron police officers' actions by their immediate supervisors and department leadership despite clear evidence to the contrary.

86. For years, the City of Akron has acquiesced to a culture of violence in the Akron Police Department by abandoning its duty under the Charter of the City of Akron to exercise control over the Police Department and by avoiding any study of the number of excessive force cases and violence involved in the arrest of citizens within the City of Akron.

87. For years the City of Akron has fostered and condoned a culture of violence in the Akron Police Department by abandoning its duty under the Charter of the City of Akron to remove police officers and/or exercise control over the Police Department by allowing city employees to restrict and/or interfere with and/or hamper the oversight activities of the Office of the Police Auditor

88. The aforementioned de facto polices, practices, and customs of the Akron Police Department include a pattern of acts of excessive use of force and other willful, wanton, and/or reckless behavior leading to harmful consequences to citizens.

89. The Akron Police Department has engaged in little or no meaningful investigation or disciplinary action in response to this pattern of Misconduct, thereby creating a culture or climate where members of the police can and do escape their acts of misconduct with impunity.

90. This pattern is the moving force behind the conduct of the Defendant police officers in the unjustified use of excessive force against Plaintiff. This event is not an isolated incident of unconstitutional policing within the City of Akron by its officers.

91. The policy, practice and custom of a police code of silence results in police officers refusing to report instances of police misconduct of which they are aware, including

unlawful searches, seizures, and prosecutions, despite their obligations under police regulations to do so, and also includes police officers remaining silent or giving false and misleading information during official investigations in order to protect themselves or fellow officers from internal discipline, civil liability or criminal charges, in cases where they and their fellow officers have engaged in misconduct.

92. The de facto polices, practices and customs of failing to hire, train, and supervise, monitor, disciping, transfer, counsel and/or control police misconduct and the code of silence are interrelated and exacerbate the effects of each other, to institutionalize police lying and immunize police officers from discipline.

93. That the unconstitutional actions of the Defendants as alleged in this complaint were part and parcel of a widespread municipal policy, practice and custom is further established by the involvement in, and ratification of, these acts by municipal supervisors and policy makers, as well as by a wide range of other police officials, officers, and divisions of the Department.

94. The policies, practices and/or alleged customs alleged in this complaint, separately and together, are the proximate cause of the injuries to Plaintiff because Defendants had good reason to believe that their misconduct would not be revealed or reported by fellow officers or their supervisors, and that they were immune from disciplinary action, thereby protecting them from the consequences of their unconstitutional conduct.

95. But for the belief that they would be protected – both by fellow officers and the City of Akron Police Department – from serious consequences, Defendants would not have engaged in the conduct that resulted in the injuries to Plaintiff.

96. The interrelated polices, practices and customs, as alleged in this complaint, individually and together were maintained, and implemented with deliberate indifference and encouraged the Defendant police officers to commit the acts alleged in this complaint against the Plaintiff.

97. The City of Akron therefore acted as the moving force behind the direct and proximate causes of the violations of Plaintiff's constitutional rights and all injuries and damages suffered by her.

## COUNT 4
### (State Law Claim for Assault and Battery)

98. All preceding paragraphs are incorporated as if fully re-written herein.

99. The actions of Defendant Shoemaker towards Plaintiff created in her the apprehension of an imminent, harmful, and offensive touching, and constituted a harmful touching, made knowingly and without legal justification.

100. Defendant Shoemaker accomplished this harmful, non-consensual touching by means of manual touch, handcuffing, and body-slamming Plaintiff as described more fully above.

101. Defendant Shoemaker directly and proximately caused this touching.

102. The actions of Defendant Shoemaker thereby constituted assault and battery against Plaintiff.

103. As a direct and proximate result of this conduct by Defendant Shoemaker, Plaintiff suffered and continues to suffer injuries and damages as described above, including, but not limited to, physical injury, adverse consequences for attending court proceedings, emotional trauma and distress, loss of reputation, loss of liberty, and other damages set forth in this Complaint.

104. In the course of this conduct Defendant Shoemaker acted under color of law and within the scope of their employment.

## COUNT 5
### (State Law Claim for Malicious Prosecution)

101. All preceding paragraphs are incorporated as if fully re-written herein.

102. Defendant police officers acted with malice in pursuing criminal charges against Plaintiff.

103. Defendant police officers pursued criminal charges to evade liability for wrongdoing and accountability for the harm inflicted upon Plaintiff.

104. Defendant police officers had no probable cause to pursue any criminal charges against plaintiff.

105. Plaintiff was ultimately acquitted of all criminal charges.

## COUNT 6
### (State Law Claim for Negligence – Willful, Wanton, and/or Reckless Conduct)

106. All preceding paragraphs are incorporated as if fully re-written herein.

107. Defendant police officers failed to exercise due care and acted in a willful, wanton, and reckless manner while engaged in police functions and activities that culminated in the above-described damages and injuries to Plaintiff.

108. Defendant police officers' reckless, wanton, and/or willful conduct proximately caused the physical and psychological damages to Plaintiff.

109. As a direct and proximate result of the misconduct of Defendant police officers, Plaintiff suffered and continues to suffer injuries and damages.

110. Defendants are jointly and severally liable for this conduct.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs demand that judgement be entered in their favor on all counts and pray the Court award the following relief:

A. Compensatory and consequential damages in an amount exceeding the jurisdictional amount in controversy requirement, to be determined at trial, for the violation of Plaintiffs' rights;

B. Punitive damages in an amount to be determined at trial for the Defendants' willful, wanton, malicious, and reckless conduct;

C. Attorneys' fees and the costs of this action pursuant to law; and

D. All other relief which this Honorable Court deems equitable and just.

## JURY DEMAND

Plaintiffs respectfully demand a trial by jury of the within matter.

Dated: January 10, 2025

Respectfully submitted,

*Imokhai Okolo*

Imokhai Okolo
(Ohio Bar #100277)
**THE OKOLO LAW FIRM LLC**
850 ½ W. Exchange St.
Akron, OH 44302
Telephone: (216) 236-8857
Email: iokolo@okololawfirm.com

*Counsel for Plaintiff*